UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JUN 20 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-428-GWU

LINDA M. JOSEPH,                                            PLAINTIFF,

VS.                       **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Joseph

>   Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

Joseph

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Joseph

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Joseph

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Linda M. Joseph, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of cardiac arrhythmia, generalized anxiety disorder, a depressive disorder, avoidant and dependent personality traits, hyperthyroidism, obesity, asthmatic bronchitis, chronic B-12 deficiency, hypertension, dysthymia, and a panic disorder with agoraphobia. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 19-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of medium level exertion, and also had the following non-exertional

impairments. (Tr. 297). She: (1) could not work with her hands held overhead, balance, or climb; (2) could have only limited exposure to dust, fumes, gases, temperature extremes, or excessive humidity; (3) required low stress, entry-level work with simple 1-2-3 step procedures, (4) could not tolerate frequent changes of work routines, could not work on a fast-paced assembly line, was unable to plan independently or solve problems, and (5) could engage in only limited interaction with the general public, co-workers, and supervisors. (Tr. 297-8). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 298-9).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The ALJ's hypothetical question mirrored that given by an ALJ in connection with a prior application for benefits, which was denied in a decision dated March 25, 2003 (Tr. 33-40), and affirmed by this Court on October 6, 2004. Joseph v. Barnhart, London Civil Action No. 03-517-GWU (E.D. Ky.). The ALJ in the present case, although finding slightly different "severe" impairments, found that the plaintiff had not demonstrated a worsening of her condition since March 25, 2003. See Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997). Since

Joseph

the medical evidence submitted fails to clearly support greater restrictions, substantial evidence supports the ALJ's decision.

The plaintiff partly alleged disability due to nerves and anxiety, conditions which she testified had been present for many years (Tr. 294). She was examined by Dr. Kevin Eggerman, a psychiatrist, in November, 2003, and this source diagnosed only a generalized anxiety disorder with a Global Assessment of Functioning (GAF) score of 65, both presently and for the past 12 months. (Tr. 192). A GAF score in this range represents only mild symptoms per the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Eggerman also estimated borderline intelligence. (Id.). He felt that the plaintiff would have a "moderately limited" ability to understand, remember, and carry out detailed instructions, and a "mildly to moderately" limited ability to interact with the public, supervisors, and co-workers, and to respond appropriately to work pressures. (Tr. 192-3). Subsequently, the plaintiff was seen on two occasions by a licensed clinical social worker, Lynn States, on referral from her family physician, Dr. Emmanuel Yumang (Tr. 221-2), for worsening anxiety over the past "17 or 18 years." (Tr. 213). Ms. States noted that the plaintiff had an "appropriate" but "sad/flat" affect, with good eye contact, grooming and hygiene, and, confusingly, that the plaintiff was both "relaxed" and "fidgety." (Tr. 216). Ms. States assessed "average" intellectual functioning, and diagnosed major depression, dysthymia, a

Joseph

panic disorder with agoraphobia, and dependent personality, with a GAF score of 45 both presently and for the past 12 months. (Id.). A GAF score in this range would represent serious impairment in social, occupational, and school functioning per the DSM-IV-TR.

While the VE testified that an individual with a GAF of 45 could not be employed full-time (Tr. 301-2), a social worker such as Ms. States is not an acceptable medical source under the Commissioner's regulations. 20 C.F.R. Section 404.1513 (2005). The ALJ reasonably could have discounted her scores on this ground. Moreover, it does not appear that she saw the plaintiff on more than two occasions, which makes her status as a treating source somewhat dubious.

The plaintiff was regularly treated at the Kentucky River Community Care (KRCC) outpatient clinic for her depression and anxiety (e.g., Tr. 141-50), and, after an exacerbation of symptoms in August, 2004, a social worker referred her to the inpatient Bailey Crisis Center for "stabilization." (Tr. 256-7). She described a variety of problems including depression, low self-esteem, poor concentration and energy and lack of social activity, in addition to worry about her children and panic attacks reportedly twice a day. (Tr. 255). Although the records from the Bailey Center are not entirely clear, the plaintiff was apparently discharged after two days at her own request after having Paxil and Seroquel added to her existing medication of Wellbutrin; at that time, she reported that her primary concern was finances and she

Joseph

could not change her mental state until she obtained help in that area. (Tr. 249, 254). She reported to her KRCC counselor on September 1, 2004 that she was doing better and was trying to keep busy. (Tr. 246). On January 19, 2005, she told the counselor that the medications were helping and she was doing "O.K." (Tr. 260). However, on January 24, she stated she was worse as a result of new family stressors, but was reported to be calm, cooperative, and friendly. (Tr. 261). She was advised to increase her daily activities. (Id.). No functional restrictions were given by KRCC or the Bailey Center.

While the plaintiff may have had an exacerbation of her nervous condition, she did not carry her burden of showing permanent functional restrictions greater than found by the ALJ. The ALJ's restrictions are consistent with the conclusions of Dr. Eggerman and with a state agency source who reviewed the evidence following his examination. (Tr. 207-9).

As far as her physical state was concerned, although the plaintiff alleged having cardiac arrhythmia, which was confirmed in an examination by Dr. Hughes Helm and by an EKG obtained at the Little Flower Free Clinic (Tr. 173, 241), the only functional restriction connected with this condition was Dr. Helm's statement that the plaintiff might need a formal evaluation before engaging in "commercial traveling." (Tr. 174). Even this was not a definite conclusion. Otherwise, Dr. Helm noted that the plaintiff had no obvious physical impairment and her examination was

11

"completely normal." (Tr. 172-4). Office notes from the plaintiff's treating sources at Christian Healthcare and at the Little Flower Free Clinic (Tr. 218-45, 259, 262) do not suggest any functional limitations. The hypothetical restrictions are consistent with a state agency reviewer (Tr. 178-85) and, once again, the plaintiff fails to carry her burden of showing greater restriction. As the ALJ noted, there was also no evidence related to the plaintiff's allegation of arthritis (Tr. 17), and her blood pressure and asthma were under control with new medication (Tr. 259, 262).

The plaintiff argues on appeal that the ALJ did not properly consider her obesity in combination with her musculoskeletal impairments, but a review of the ALJ's decision shows that he considered the applicable regulations (Tr. 17-18), and the plaintiff has not suggested how her weight, which was most recently measured as 203 pounds (Tr. 262), would prevent her from performing medium level exertion. The plaintiff also argues that the ALJ failed to give sufficient reasons for finding her testimony not credible. While the hearing decision does not contain a detailed rationale for finding the plaintiff not credible, other than a statement that her allegations were disproportionate to the medical evidence (Tr. 21), the ALJ did discuss the plaintiff's testimony (Tr. 19) and, given the lack of objective findings, the error was, at most, harmless. The ALJ also pointed out that the plaintiff's subjective

Joseph

allegations of arthritic pain were completely unsupported by objective findings. (Tr. 17).

The decision will be affirmed.

This the __20__ day of June, 2006.

*[signature]*

G. WIX UNTHANK
SENIOR JUDGE